UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JEFFREY TODD BROWN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-CV-01564-NCC |
| | ) |
| **ANDREW M. SAUL,**[1] | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Jeffrey Todd Brown ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.*  Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 19).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on June 13, 2016 and June 14, 2016, respectively (Tr. 163-73).  Plaintiff was initially denied on August 31, 2016, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 98-106).  After a hearing,

---

[1] Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by decision dated August 29, 2018, the ALJ found Plaintiff not disabled (Tr. 9-25). On May 6, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 2-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022 (Tr. 14). The ALJ found Plaintiff engaged in substantial gainful activity during the following periods: 2007, 2008, 2009, 2010, 2011, and the fourth quarter of 2017 but that there has been a continuous 12-month period(s) during which the Plaintiff did not engage in substantial gainful activity (Tr. 14-15). The ALJ determined Plaintiff has the severe impairments of anxiety, attention deficit hyperactivity disorder, depression, and learning disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). After considering the entire record, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations (Tr. 17). Plaintiff is limited to simple, routine tasks (*Id.*). Plaintiff can have only frequent, superficial interaction with coworkers, and only occasional interactions with the public (*Id.*). Plaintiff cannot perform tandem tasks (*Id.*). The ALJ determined that Plaintiff is capable of performing past relevant work as a store laborer and hand packer (Tr. 20). Thus, the ALJ concluded that Plaintiff has not been under a disability from June 25, 2006, through the date of the decision (*Id.*).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

3

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because

4

substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues regarding the ALJ's RFC evaluation.  First, Plaintiff asserts that the ALJ failed to properly evaluate RFC when she did not provide any limitation regarding Plaintiff's ability to interact with supervisors (Doc. 18 at 3-6).  Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. J. Edd Bucklew, Ph.D. (*Id.* at 3-6).  Third, Plaintiff asserts that the ALJ failed to properly consider the Third Party Function report of Susan Clones (*Id.* at 6-7).  For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Interaction with Supervisors**

First, Plaintiff asserts that the ALJ failed to properly evaluate RFC when she did not provide any limitation regarding Plaintiff's ability to interact with supervisors (Doc. 18 at 3-6). Specifically, Plaintiff argues that while the ALJ found Plaintiff has a moderate limitation in his ability to interact with others at step 3 and found Plaintiff limited to only frequent, superficial interaction with coworkers and only occasional interaction with the public, the ALJ erred when she did not limit Plaintiff's ability to interact with supervisors in her RFC determination at step 4 (*Id.* at 3).

At step 3, the ALJ evaluates whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*  If

5

the ALJ does not find that the claimant meets a listing, then the ALJ's analysis continues to Step 4.  20 C.F.R. § 416.920.  At Step 4, the ALJ determines claimant's RFC and thus whether a claimant is prevented from doing his past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations.  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1).  An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).  *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619).  "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

The Court finds the ALJ's RFC determination as to Plaintiff's ability to interact with others to be supported by substantial evidence and that the ALJ's analysis at steps 3 and 4 are not inconsistent.  In this case, at step 3 the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15).  In so doing, the ALJ considered the paragraph B criteria of listings 12.02, 12.04, 12.05, and 12.06 and found

6

Plaintiff has moderate limitation in the area of interreacting with others (Tr. 15-16).  As support for her finding, the ALJ indicated Plaintiff "is currently working and has no problems getting along with other workers or supervisors" (Tr. 16, 31-32).  The ALJ further noted that Plaintiff "was cooperative during appointments, but was also mildly condescending;" Plaintiff "struggled with conversations during his autism assessment, and had difficulty responding to his conversational partner's interests;" and Plaintiff "exhibited fair eye contact" (*Id.*).  In her RFC determination at step 4, the ALJ limited Plaintiff to "only frequent, superficial interaction with coworkers [] and only occasional interaction with the public" (Tr. 17).  The RFC determination does not include any limitation regarding Plaintiff's interaction with supervisors.

As a preliminary matter, the determinations at steps 3 and 4 are distinct.  "[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill,* 888 F.3d 978, 980 (8th Cir. 2018).  *See also Lacroix v. Barnhart*, 465 F.3d 881, 883 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.").  Plaintiff, relying on the opinion of Dr. J. Edd Bucklew, Ph.D., argues that Plaintiff needs to avoid more complicated or stressful social relationships and that a relationship with a supervisor is more complicated and more likely to cause Plaintiff to become dependent on others (Doc. 18 at 4).  However, as addressed in more detail below, the ALJ properly considered the opinion of Dr. Bucklew.  Further, the ALJ explicitly addressed Plaintiff's ability to interact with supervisors, stating, Plaintiff "is currently working and has no problems getting along with other workers or supervisors" (Tr. 16).  Later, during her RFC evaluation of Plaintiff, the ALJ indicated that her RFC assessment accounts for the Plaintiff's severe mental impairments by limiting him to simple, routine work, with

7

additional limitations on social interaction (Tr. 19).  In doing so, the ALJ conducted a detailed analysis of the limited mental health record and highlighted areas regarding interaction with others including Plaintiff's tendency "of having relationships with people who enable him by giving him money and performing tasks for him that he is able to complete himself" (Tr. 18). The ALJ also indicated that Plaintiff was working almost 30 hours a week and reported doing well with holding down jobs (*Id.*).  As noted by the ALJ, Plaintiff testified that he was currently working, acknowledged that he had no trouble following instructions or following through with assignments, and has no problems with his coworkers or employer (Tr. 17, 31-32, 40-41, 43). Plaintiff also self-reported on his Function Report that he gets along "ok" with authority figures "if I'm not disturbed by demanding or sarcastic gestures" (Tr. 283).  Indeed, Plaintiff's employer reported that Plaintiff required very little supervision and that he understands when one job is complete and moves on to the next without needing to be told (Tr. 318).  The employer further reported that Plaintiff required no special considerations, he completes jobs on time, and is on time to work as scheduled (Tr. 319).  Therefore, the ALJ's determinations at steps 3 and 4 are not inconsistent and are supported by substantial evidence.

**B. Opinion of Dr. J. Edd Bucklew, Ph.D.**

Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr J. Edd Bucklew, Ph.D. ("Dr. Bucklew") (Doc. 18 at 3-6).  Plaintiff asserts that the ALJ erred in not explaining why she did not credit Dr. Bucklew's opinions regarding Plaintiff's ability to interact appropriately with others and ability to maintain attention and concentration for extended periods (*Id.* at 4-5).

On August 30, 2016, Dr. Bucklew, a state agency psychological consultant, issued Case Analyses and Mental Residual Functional Capacity Assessments in conjunction with the

Disability Determination Explanations for both Plaintiff's SSI claim and DIB claim (Tr. 77-81, 90-95). In the Case Analyses, Dr. Bucklew indicated, when addressing the paragraph B criteria of the mental health listings, that Plaintiff has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two repeated episodes of decompensation (Tr. 78, 91). Dr. Bucklew detailed the medical record at the time of the analysis, noting specifically that one physician found to be him "capable of managing his own affairs to a considerably greater extent, but that he had enabling relationships with others allowing him to depend on them for financial support and for doing simple tasks for him that he was capable of doing for himself" (Tr. 78, 91). Dr. Bucklew further noted that, at the time of analysis, that Plaintiff had worked for several years at the job he then occupied "citing no limitation [and] no need for special support" and that he had been offered full time work but was not interested in increasing hours (Tr. 78, 91, 373). Dr. Bucklew's RFC Assessments found Plaintiff "not significantly limited" in most areas except that Plaintiff is "moderately limited" in following areas: the ability to carry out detailed instructions; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to interreact appropriately with the general public; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others (Tr. 79-81, 92-95). Dr. Bucklew concluded that Plaintiff would be able to maintain employment but that "[h]e may need to avoid more complicated or stressful social relationships due to dependent behavior noted throughout the record" (Tr. 78, 91).

      The ALJ properly afforded the opinion of Dr. Bucklew "some weight" (Tr. 19). In doing so, the ALJ found Dr. Bucklew's opinion to be "generally consistent with the medical evidence of record" (Tr. 19). Specifically, as noted by the ALJ, the limited record is replete with generally

9

normal mental health exams finding Plaintiff generally alert and oriented, normal mood affect, appropriate behavior, average intellectual functioning, and fair insight (Tr. 19, 216-18, 361, 363, 369, 370, 372-73, 376, 377, 382, 388, 401, 412-13, 430-31). For example, one of his treating physicians indicated that it was his opinion that Plaintiff's issues with concentration have been present since childhood and are likely related to his learning disorder (Tr. 374). However, as the physician noted, Plaintiff "reports he has functioned well with full-time and part-time jobs and has a significant and impressive work history. He is excelling in his current job working 30-40 hours a week and has had a fantastic review after 1 year of work" (*Id.*). The ALJ further indicated that Plaintiff had issues with social interaction during his autism assessment and that he was diagnosed with a learning disability (Tr. 19, 278, 368, 397, 422-27). Indeed, Dr. Bucklew's assessment accounted for some moderate limitations in the area of social interaction but, as also noted by the ALJ, considered Plaintiff's work experience (Tr. 19, 80-81, 93-94). The ALJ was permitted to rely upon the opinion of the non-examining medical expert to the extent it was consistent with other reliable evidence. *Tuggle v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-04107-NKL, 2019 WL 1980702, at *3 (W.D. Mo. May 3, 2019) (citing *Turpin v. Colvin*, 750 F.3d 989, 993-4 (8th Cir. 2014)).

Furthermore, to the extent Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly include several of the limitations found by Dr. Bucklew in her RFC determination and these same limitations were not included in the ALJ's hypothetical before the vocational expert, the ALJ is not required to include every limitation identified in a medical opinion in her RFC determination and she is only required to include those limitations she finds credible in her hypothetical to the vocational expert. *Martise*, 641 F.3d at 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs

10

to include only those impairments that the ALJ finds are substantially supported by the record as a whole."). Therefore, the ALJ's evaluation of Dr. Bucklew's opinion is supported by substantial evidence.

**C. Opinion of Susan Clones**

Finally, Plaintiff asserts that the ALJ failed to properly consider the Third Party Function report of Susan Clones ("Ms. Clones") (Doc. 18 at 6-7). Specifically, Plaintiff argues that the ALJ failed to provide good reasons to discredit the observations and opinions from Ms. Clones, Plaintiff's neighbor and friend since 1975 (*Id.* at 7). When determining RFC, the Commissioner must consider all relevant medical and other evidence, including descriptions and observations of the limitations by both the plaintiff and others such as family or friends. 20 C.F.R. § 404.1545(a)(3). To the extent the statements contain opinions, the ALJ "generally should explain the weight given to [nonmedical source] opinions." 20 C.F.R. § 404.1527(f)(2).

On July 7, 2016, Ms. Clones, Plaintiff's friend and neighbor, completed a Third Party Function Report (Tr. 309-16). In the report, Ms. Clones indicated that she has known Plaintiff since 1975 and, despite her move to Oregon in 2015, speaks to him on the phone on a weekly basis (Tr. 309). Ms. Clones opined that she is "unaware of all his daily tasks" but that she knows "he works approx. 4 days/week at a factory job" (*Id.*). When addressing Plaintiff's limitations, Ms. Clones' report is not very detailed, she answered "unknown" to a number of questions (Tr. 310-15). However, to the extent Ms. Clones was able to complete the report, she indicated that, Plaintiff is limited in the following non-exertional areas: understanding, following instructions, completing tasks, memory, and concentration (Tr. 314). Ms. Clones specifically highlighted Plaintiff's inability to follow spoken instructions by providing an example; she told him not to travel the wrong way on a road and one minute later he drove the wrong way on that same road

11

(*Id.*).  Ms. Clones also indicated that Plaintiff panicked on his way to "the diagnosis center" and needed someone to escort him to the location (*Id.*).  Ms. Clones stated that she has been Plaintiff's advocate since 2013 and that she has spent lots of money addressing several of his problems (Tr. 316).  In fact, Ms. Clones detailed some of Plaintiff's financial trouble, noting that at one point Plaintiff had 3 payday loans (*Id.*).

The ALJ properly afforded Ms. Clones' opinion "little weight" (Tr. 19).  The ALJ found Ms. Clones not to be an acceptable medical source (*Id.*).  *See* 20 C.F.R. §§ 404.1502(e), 416.902(j)("Nonmedical source means a source of evidence who is not a medical source.").  An ALJ must consider opinions regarding a claimant's functional limitations from nonmedical sources such as Ms. Clones and the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning[.]" 20 C.F.R. §§ 404.1527(f); 416.927(f).  Here, the ALJ found Ms. Clones' opinion to be inconsistent with the medical evidence (Tr. 19).  As addressed in more detail above, the medical evidence of record includes generally normal mental health examinations.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").  Further, the Court notes that Ms. Clones' opinion is not detailed nor could it be in light of Ms. Clones' move out of state.  Finally, although the ALJ did not note it in her opinion, there is some suggestion that Ms. Clones was perhaps biased in her opinion.  Dr. Bucklew noted that the third party report was "completed by the person described by [one of Plaintiff's physicians] in 2014 as one of several people who enable [Plaintiff's]

12

dependency (and, who [Plaintiff] was noted to have then owed several thousand dollars)" (Tr. 78, 371-74).  Therefore, the Court finds that the ALJ properly considered Ms. Clones' opinion.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 29th day of September, 2020.

                                          /s/ Noelle C. Collins  
                                          NOELLE C. COLLINS  
                                          UNITED STATES MAGISTRATE JUDGE